**In re Harvey A. SCHNEIDER, Debtor.**

**Bankruptcy No. 86–3023–8P7.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 23, 1991.

William A. Borja, Clearwater, Fla., for debtor.

Margot Pequignot, Belleair, Fla., for creditor Connie D. Currey.

## ORDER ON MOTION FOR CONTEMPT

ALEXANDER L. PASKAY, Chief Judge.

THIS is a previously closed Chapter 7 liquidation case which has been reopened at the request of Harvey A. Schneider (Debtor). The matter under consideration is a Motion for Contempt filed by the Debtor who seeks to hold in contempt Connie D. Currey (Ms. Currey), a creditor of the Debtor. In order to put the matter under consideration in proper focus, it should be helpful to recap briefly the procedural history not only of this bankruptcy case, but also a state court litigation between Ms. Currey and the Debtor.

The Debtor filed his voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code in this court on July 17, 1986. On November 28, 1986, the Debtor obtained his discharge and the Trustee of the estate having filed his report of no distribution on December 31, 1986, the final decree was entered closing the administration of the estate. The Schedule of Liabilities filed with the Petition properly scheduled Ms. Currey as a creditor, albeit it is contended that the amount stated owed to her was incorrect. It is conceded that Ms. Currey was fully aware that the Debtor filed his Petition for Relief and there is no contention that the debt owed to Ms. Currey would be excepted from the general bankruptcy discharge based on any provision of § 523(a), particularly § 523(a)(3) of the Bankruptcy Code.

According to the stipulated facts based on the record, on January 13, Ms. Currey loaned the Debtor $31,000. At the time the Debtor filed his voluntary Petition, there was still an outstanding balance on this obligation in the amount of $29,000. Two days after the commencement of the Debtor's Chapter 7 case, the Debtor executed a

promissory note in the favor of Ms. Curry in the amount of $29,000. The Debtor continued making regular payments to Ms. Currey even after he obtained the discharge until April 15, 1989, when he stopped making any further payments.

On November 13, 1989, Ms. Currey filed suit against the Debtor in the Circuit Court of Pinellas County on the promissory note. Initially, the Debtor moved to dismiss the suit on the basis that the debt had been discharged in bankruptcy. The Motion was denied by the Circuit Court on January 31, 1990. In due course, the Debtor filed his answer to the Complaint filed by Ms. Currey and, in addition to general denials, also asserted as an affirmative defense his bankruptcy discharge. The matter was set down for a bench trial which was held on July 6, 1990, at the conclusion of which the Circuit Court directed the parties to submit a memorandum of law on the legal issues related to the validity of the affirmative defense of discharge asserted by the Debtor. On July 20, 1990, the Circuit Court entered an order and concluded that the greater weight of the evidence supported the claim of Ms. Currey and, based on this Court's decision in the case of *In re Richardson,* 102 B.R. 254 (M.D.Fla.1989), the discharge obtained by the Debtor was not a bar to the claim asserted by Ms. Currey. Accordingly, the Circuit Court entered a Final Judgment on the same date in favor of Ms. Currey and against the Debtor in the principal sum of $24,200, together with interest accrued in the amount of $3,700 or for a total of $27,900, together with attorney fees and costs.

On July 31, 1990, the Debtor filed a Motion for Rehearing which was denied by the Circuit Court by an order entered August 30, 1990. In due course, the Debtor filed a Notice of Appeal in the Second District Court of Appeal, which appeal is still pending and now is scheduled for oral argument in the Court of Appeals on May 29, 1991.

On July 23, 1990, or three days after the entry of the Final Judgment in the Circuit Court litigation, the Debtor filed a Motion To Reopen the closed case. His initial Motion To Reopen was denied because of improper service, but the Amended Motion To Reopen was granted by an order entered, ex parte, on August 23, 1990, and the case was reopened for the limited purpose of permitting the Debtor to seek sanctions against Ms. Currey. On August 27, 1990, the Debtor also filed a "Motion To Enjoin Creditor" [sic] which was denied and so was the second Motion filed on August 27, 1990, because the Debtor failed to comply with the procedure for injunctive relief prescribed by Bankruptcy Rule 7001(7).

On November 11, 1990, the Debtor filed a Motion for Contempt, the Motion which is presently under consideration. In his Motion, the Debtor urges that Ms. Currey willfully and knowingly violated the permanent injunction included in his discharge, therefore, she is in civil contempt of the Court and should be punished accordingly. In addition, the Debtor also sought an order determining that the judgment entered by the Circuit Court was void.

Basically, these are the relevant facts, all of which are without dispute which, according to counsel for the Debtor, would warrant to find Ms. Currey in civil contempt and impose appropriate sanctions and punishment for violating the permanent injunction provided for by § 524(a)(2), included in the Debtor's discharge.

Counsel for Ms. Currey also intimated, although not really urged, that it was improper to reopen a closed case, ex parte, and counsel should have been given an opportunity to oppose the Motion To Reopen. In addition, in defense of the Motion for Contempt, he also urged several distinct propositions, any of which, according to counsel for Ms. Currey, would bar any relief sought by the Debtor.

First, it is urged that the obligation on which the suit was filed in the Circuit Court was based on the promissory note executed after the commencement of the case, thus being a postpetition obligation unaffected by the discharge, since a discharge in bankruptcy protects only prepetition obligations and has no effect on Ms. Currey's rights to pursue her claim against the Debtor based on this promissory note.

Second, even assuming that the obligation sought to be enforced was, in fact, a prepetition obligation, which ordinarily would have been discharged, the execution of the promissory note postpetition by the Debtor was, in fact, a reaffirmation of the discharged debt, thus, removed from the protection of the Debtor's discharge. In support of this proposition, counsel for Ms. Currey points out the undisputed fact that the Debtor actually made the installment payments pursuant to the promissory note executed postpetition, regularly between November 5, 1986, until April 15, 1989. Third, although this is not very well articulated, it is urged that the obligation based on the promissory note executed postpetition by the Debtor was, in fact, a novation supported by independent consideration, thus, would make the note sued upon by Ms. Currey proper to collect a postpetition debt again not affected by the general bankruptcy discharge.

The strongest argument advanced by counsel for Ms. Currey, however, is based on the proposition that the Debtor is collaterally estopped to relitigate the effect of his discharge on the obligation owed to her, an obligation represented by the Final Judgment entered by the Circuit Court in favor of Ms. Currey. According to counsel, this proposition is supported by the undisputed facts that the Debtor elected to defend the suit in the State Court; he fully participated in that suit and repeatedly asserted his discharge as a defense; that the validity of this defense was fully considered and rejected by the Circuit Court; the Debtor's attempt to set aside the Final Judgment by its Motion for Rehearing was denied; and lastly, the Debtor filed a Notice of Appeal, and the appeal is currently pending before the Second DCA, which appeal involves the very issue that the Debtor seeks to litigate in this Court—the validity of the affirmative defense of discharge in bankruptcy.

 Considering the propositions urged by counsel for Ms. Currey seriatim, it should be noted at the outset that § 350 of the Bankruptcy Code and Bankruptcy Rule 5010 expressly permit this Court to reopen a closed case for the purpose of according relief to a debtor. In this instance, this Court is satisfied it was appropriate to reopen a closed case for the limited purpose to give an opportunity to the Debtor to present his claim that Ms. Currey violated the permanent injunction by filing the suit against the Debtor. This is so because it cannot be gainsaid that this Court has the power to determine the extent of the scope of its lawful orders, including the power, scope and the reach of the protection granted to determine a discharged debtor. Contrary to counsel's suggestion, this jurisdiction is exclusive and not concurrent with other courts. The suit filed by Ms. Currey was based on a promissory note creating nothing more than a personal liability and not the type of obligation, the dischargeability of which could be litigated either in this Court or a non-bankruptcy forum of competent jurisdiction, e.g., liabilities excepted from the discharge under § 523(a)(1), (3), (5), (7), (8), (9), and (10). Had the extent of the scope and the extent of the protection of the Debtor's discharge been presented for this Court's consideration at once when the suit was filed by Ms. Currey in the Circuit Court, it is clear that this Court would not have had any difficulty to conclude that the discharge operated as an absolute and complete bar and prohibited any further collection efforts by Ms. Currey of the debt owed by the Debtor to her. Based on the undisputed facts of this case, this Court is satisfied that, notwithstanding the execution of a new promissory note after the commencement of the Chapter 7 case, this was clearly a prepetition obligation that was discharged. This is so unless this Court accepts the next proposition urged by counsel for Ms. Currey that the execution of the promissory note was, in fact, a reaffirmation agreement which permitted Ms. Currey to pursue her claim in spite of the Debtor's discharge, similar to the situation involved in *In re Richardson, supra*, relied on by the Circuit Court in rejecting the defense of discharge asserted by the Debtor. The difficulty with this proposition should be evident when one reads § 524(c). This Section provides, inter alia, that an

agreement between a holder of a claim of the debtor to reaffirm a discharged debt is unenforceable unless such agreement contains a clear and conspicuous statement advising the debtor that he or she is entitled to rescind the agreement at any time prior to the discharge, or within 60 days after the agreement is filed with the court, § 524(c)(2); that the agreement which has been filed with the court is accompanied by a declaration or an affidavit of an attorney, if the debtor has an attorney, which states that the agreement represents a fully informed and voluntary agreement by the debtor, § 524(c)(3)(A); and it does not impose an undue hardship on the debtor or on the dependent of a debtor, § 524(c)(3)(B). Moreover, this Section further requires that when the discharge has been granted and the debtor desires to make an agreement to reaffirm a discharged debt, the court shall hold a hearing at which time the court shall inform the debtor that the agreement is not required by law; and explaining the legal effect and the consequences of the reaffirmation agreement. In *In re Richardson, supra,* this Court held that notwithstanding the fact that no reaffirmation hearing was held, the debtor was estopped from asserting that the agreement was invalid because the reaffirmation agreement signed by the debtor, unlike in this case, contained all requirements of § 524(c) and (d) under the Code which rendered the reaffirmation agreement valid and enforceable. First, there is no evidence in this record that there was ever in fact a reaffirmation agreement signed by this Debtor. The only document signed by the Debtor was the new promissory note. Second, there is nothing in the note which even remotely indicates a compliance with § 524(a) and (d) of the Code. For this reason, this Court is satisfied that the execution of the second promissory note cannot possibly serve as a legally enforceable reaffirmation agreement.

Based on the foregoing, this Court is satisfied that the debt sued upon by Ms. Currey was a prepetition obligation that was not excepted from the general discharge; and the execution of the note was neither valid nor was the reaffirmation a novation, which would also be subject to the mandate of § 524(c) and (d). However, these conclusions do not end the inquiry because this case has a different twist which brings into play very significant postpetition activities of this Debtor, all of which are relevant to the ultimate resolution of the matter under consideration. Based on the facts of this record, it is still necessary to consider whether or not the doctrine of collateral estoppel urged by counsel for Ms. Currey would bar the relief sought by the Debtor.

■ As noted earlier, this Debtor elected to fully participate in the Circuit Court litigation, which put in issue the effectiveness and the extent of the protection of his bankruptcy discharge. Having lost in the Circuit Court and having elected to pursue this matter further by filing a Notice of Appeal which is still pending, it certainly ill behooves this Debtor now to attempt to relitigate the very same issue in this Court. The facts involved in this case are not very dissimilar from the facts involved in the case of *In re Barber Industries, Inc.,* 30 B.R. 382 (M.D.Fla.1989), decided by this Court in 1983. In *Barber Industries,* the debtor fully litigated the issue whether or not an obligation sued on by a creditor was excepted from the general bankruptcy discharge because the debtor failed to schedule a creditor who did not receive a notice of the pendency of the bankruptcy case. In *Barber,* the debt involved was the type which could have been excepted from the general discharge under § 17(a)(3) of the Bankruptcy Act of 1898, unlike the debt involved in this case which ordinarily would have been discharged. In *Barber,* the attempt by the debtor to relitigate the issue was not permitted because the defense of the discharge in bankruptcy was fully litigated in the state court action and resolved adversely to the debtor and the issue could no longer be litigated in this forum. The Debtor in this instance, just like the debtor in *Barber,* having elected to litigate this matter in a nonbankruptcy forum, it is now collaterally estopped to relitigate this issue and has to wait and trust his fate to the successful outcome of his pending appeal.

Needless to say, in the event the Second DCA reverses the Circuit Court, Ms. Currey would not be permitted to proceed any further, and if she does, she would be clearly in violation of the permanent injunction and, in turn, guilty of civil contempt.

Based on the foregoing, this Court is satisfied that the present request by the Debtor to hold Ms. Currey in contempt cannot be granted. Neither can this Court grant the Debtor's request to declare the Final Judgment entered by the State Court invalid.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Contempt be, and the same is hereby, denied.

DONE AND ORDERED.