**In re Amanda L. JOHNSON, Debtor.**

**Bankruptcy No. 87 B 12788.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Dec. 17, 1992.

**534**

Barrie M. Yacher, Chicago, IL, for Amanda L. Johnson, debtor.

David G. Wentz, Schillerstrom & Cresto, Ltd., Naperville, IL, for Harris Bank Naperville.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion of Amanda L. Johnson (the "Debtor") to find Harris Bank Naperville (the "Creditor") in contempt for alleged violation of the permanent injunction provisions of the order of discharge entered in this case under 11 U.S.C. § 524(a). The Debtor failed to attend the reaffirmation hearing held under 11 U.S.C. § 524(d), notwithstanding the Debtor's reaffirmation agreement with the Creditor. She made partial performance and subsequently defaulted thereunder post-discharge.

After review of the pleadings, affidavits and arguments of counsel, the Court denies the motion. Under the undisputed material facts there was no willful violation of the discharge order. Further, the instant reaffirmation agreement is not enforceable for failure to comply with all the requirements of section 524(c), as well as the Debtor's failure to attend the reaffirmation hearing.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I) and (O).

## II. FACTS AND BACKGROUND

The material facts of this matter are undisputed. The Debtor filed a voluntary Chapter 7 petition on September 1, 1987. The Creditor was scheduled as the sole secured creditor holding an undisputed secured claim against the Debtor's automobile which was listed among her other items of personal property. In the required statement of intention pursuant to 11 U.S.C. § 521(2)(A), the Debtor stated she intended to reaffirm the debt owed to the Creditor.

Thereafter, the parties entered into a written reaffirmation agreement, filed on October 29, 1987.[1] In essence, the agreement provides that the Creditor would not declare the Debtor in default if she continued to make payments under the terms and condition of the underlying security documents, in consideration for which, the Creditor would refrain from taking any actions against the subject vehicle or instituting any other complaints or motions in the pending bankruptcy proceeding. The reaffirmation agreement further provides that in the event of default under the underlying security documents, or the reaffirmation agreement, the Debtor agrees to pay costs and expenses, plus reasonable attorney's fees. The agreement states that it was voluntary, not forced or coerced, and that the Debtor was represented by her attorney during the course of the case and the execution of the agreement. It is significant that the reaffirmation agreement does not contain any statement concerning

---

1. The reaffirmation agreement references attached security documents although same were not appended to the copy of the agreement filed with the Clerk of the Bankruptcy Court.

the Debtor's rescission rights as required under section 524(c)(2).[2] Although the agreement was executed by the Debtor and a representative of the Creditor, the Debtor's attorney did not execute a supporting affidavit, or declaration in conformance with section 524(c)(3)(A) and (B).[3]

On April 28, 1988, the Honorable David H. Coar, then presiding over the case, entered an order of discharge. In addition, he set a reaffirmation hearing pursuant to section 524(d), for May 23, 1988. From the certificate of service appended to the order, it appears same was mailed out by the Bankruptcy Clerk's Office to the Debtor, her attorney, and all other parties in interest, including the Creditor. The parties have not furnished a record of who may have attended the scheduled reaffirmation hearing. Thereafter, Judge Coar entered an order concluding the hearing which noted that the Debtor failed to appear at same.[4] The case was subsequently closed on July 15, 1988.

Effective January 1, 1992, most cases for certain of the outlying counties in this district were reassigned to the undersigned bankruptcy judge, including the instant motion of the Debtor. The motion, filed on October 16, 1992, was supported by the Debtor's affidavit in which she admits she failed to attend the scheduled reaffirmation hearing. Notwithstanding her failure to attend the hearing, she had made payments on the subject debt and agreement. The vehicle was repossessed on July 8, 1989, although the Debtor stated she had made some payments after repossession, but could no longer afford to make any further payments. Also attached to her motion is an affidavit from an attorney who repre-sented the Debtor during the bankruptcy case and the negotiation of the reaffirmation agreement. His affidavit states in relevant part that he advised the Creditor's attorney in September 1992, of the Debtor's failure to attend the reaffirmation hearing; of his opinion that the reaffirmation agreement was not enforceable; and that all further collection efforts should cease. The Creditor, however, indicated to the Debtor's attorney that it would continue in its collection efforts. The Debtor concludes that because she failed to attend the scheduled reaffirmation hearing, the reaffirmation agreement is unenforceable. Moreover, she contends that the continued collection efforts on behalf of the Creditor should result in a finding of civil contempt for violation of the discharge order.

The Creditor maintains that the Debtor made no efforts to rescind the reaffirmation agreement within the sixty days after same was filed with the Court, nor before the entry of the Debtor's order of discharge. The Creditor further alleges that after repossession, the vehicle was sold and the Creditor thereafter pursued the deficiency owing and remaining unpaid under the reaffirmation agreement. The Debtor then voluntarily entered into an agreed installment order apparently entered in connection with state court collection action. Under the terms of that order (not furnished as part of this record), the Debtor paid $4,779.02, leaving a balance claimed due and owing of $6,115.12 including interest and costs. The Creditor concludes, that the Debtor's mere failure to attend the reaffirmation hearing does not invalidate the otherwise enforceable unrescinded reaffirmation agreement because she re-

---

**2.** Section 524(c)(2) provides in relevant part that the reaffirmation agreement is enforceable only if, *inter alia,* it "contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later...." 11 U.S.C. § 524(c)(2).

**3.** Section 524(c)(3)(A) and (B) provide in pertinent part that a reaffirmation agreement is enforceable, *inter alia,* only if:

(3) such agreement has been filed with the court and, if applicable accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that such agreement—

(A) represents a fully informed and voluntary agreement by the debtor; and

(B) does not impose an undue hardship on the debtor or a dependent of the debtor.

11 U.S.C. § 524(C)(3)(A) and (B).

**4.** The Chapter 7 trustee had previously filed a no-asset report, which was approved by Judge Coar on June 30, 1988.

ceived notice of the scheduled reaffirmation hearing. The Creditor's response in opposition prays that the reaffirmation agreement be enforced in pending state court proceedings, the Debtor's motion denied, and that it be awarded its attorney's fees and costs. Both parties waived evidentiary hearing and filed supplemental pleadings to brief the issues.

### III. PRINCIPAL ARGUMENTS AND AUTHORITIES OF THE PARTIES

The principal case authority argued by the Debtor is *In re Roth*, 38 B.R. 531 (Bankr.N.D.Ill.1984), *aff'd*, 43 B.R. 484 (N.D.Ill.1984). In *Roth*, the debtor was present at the reaffirmation hearing, but failed to bring the agreement to the judge's attention. A discharge order was entered without giving the debtor the admonitions required by section 524(d). *Roth* held that the failure of the bankruptcy judge to give the required statutory admonitions rendered the agreement unenforceable despite the debtor's failure to advise of the existence of the agreement. 43 B.R. at 488. *Roth* has been cited with approval by several courts. *See, e.g., Arnhold v. Kyrus*, 851 F.2d 738, 741 (4th Cir.1988).

In addition, the Debtor cites *In re Saeger*, 119 B.R. 184 (Bankr.D.Minn.1990), for the proposition that if a creditor wants to be sure reaffirmation agreements are binding, the creditor must insure that the debtor be informed of the debtor's options as required by section 524. *Id.* at 188. Additional cases were cited which held that reaffirmation agreements are unenforceable for failure of a reaffirmation hearing to be held, and the requisite admonitions given. *See In re Hitt*, 137 B.R. 401, 404 (Bankr.D.Mont.1992); *In re Fisher*, 113 B.R. 714, 716–717 (Bankr.W.D.Okla.1990); *In re Churchill*, 89 B.R. 878, 879 (Bankr.D.Colo.1988).

The principal authority relied upon by the Creditor is *In re Sweet*, 954 F.2d 610 (10th Cir.1992). Similar to the case at bar, the debtors in *Sweet* executed and filed a written reaffirmation agreement prior to the entry of a discharge order when they were represented by counsel, and had received notice of the scheduled reaffirmation hearing. *Id.* at 611. In *Sweet*, as here, the debtors never attempted to rescind the reaffirmation agreement and continued to make payments thereafter for sometime, but defaulted. *Id.* The creditor repossessed and sold the collateral, and filed a subsequent state court action against the debtors for the deficiency. *Id.* *Sweet* noted that the sixty-day recision period ran before the scheduled reaffirmation hearing, so the debtors' attendance at the hearing would have been meaningless. *Id.* at 612–613. The court also noted that debtors have a duty under section 521(5) to attend scheduled reaffirmation hearings. *Id.* at 613. Such duty is imposed on debtors, not creditors. Thus, *Sweet* concluded the creditor was put in the position of not knowing whether to honor the agreement, foreclose on the collateral, and risk that the debtors would successfully defend any action. *Id.* *Sweet* concluded that by their failure to attend the reaffirmation hearing, the debtors waived their "rights" to attend, and could not thereby escape enforcement of an otherwise enforceable reaffirmation agreement. *Id.* The Debtor counters that *Sweet* should not be followed because it is the first case speaking to a debtor's waiver of his "right" (not obligation), to attend the reaffirmation hearing. The Debtor maintains that the case does not address the issue of what would have happened if a debtor had a "legitimate excuse" for not attending the hearing.

The Creditor distinguishes *Roth* on its facts as well as on the point that it did not discuss the effect on the reaffirmation agreement of a debtor's failure to attend the reaffirmation hearing. In addition, the Creditor argues that *Roth* was decided under the version of section 524 prior to the subsequent amendments in 1984 and 1986. The Creditor concludes that those changes now make the holding of a reaffirmation hearing discretionary. According to the Creditor, *Arnhold*, like *Roth*, is distinguishable because the hearing was scheduled and the debtor appeared, but the court was not informed of the existence of the

reaffirmation agreement, and thus failed to give the requisite admonitions.

Furthermore, the Creditor distinguishes *Hitt* and *Saeger* because in those cases a discharge hearing was not even scheduled, much less held, so the issue of the debtor's waiver was not reached. The Creditor notes that *Fisher* was disregarded and questioned in *Sweet.* The bankruptcy court opinion in *Sweet,* 116 B.R. 283 (Bankr.W.D.Okla.1990), noted that *Fisher* and other similar cases do not address the issue of how the creditor can enforce the debtor's attendance at the hearing if the debtor does not want to appear. Thus, the "crafty debtor" is encouraged not to attend the hearing, and subsequently argues that therefrom the agreement is invalid. *Id.* at 285 n. 2.

The Creditor further argues that *Sweet* relied on the theory of equitable estoppel to find the reaffirmation agreement enforceable because there, the debtors knew they did not attend the reaffirmation hearing. In *Sweet,* as in the matter at bar, there had been no assertion that the creditor knew that the debtors did not attend the hearing, and the creditor relied on the validity of the agreement and did pursue its right to seize the vehicle. Thus, *Sweet* concluded that it would be unfair to allow the debtors to escape liability on a mere technicality that they chose not to attend the hearing. Such result allows debtors to take advantage of their own wrong. *Sweet* held that the duty to attend the reaffirmation hearing is placed upon the debtor, and a debtor's failure to attend the reaffirmation hearing does not invalidate an otherwise enforceable reaffirmation agreement, as long as the debtor was represented by counsel and received advance notice of the reaffirmation hearing. 954 F.2d at 613.

## IV. DISCUSSION

■ A preliminary issue overlooked by both parties is that the case was closed on July 15, 1988. Hence, there is no case pending before the Court within which to decide the instant motion. Rather than summarily dispose of the arguments of the parties because neither has asked for reopening, the interests of justice and the merits of the dispute militate in favor of the Court exercising its authority under 11 U.S.C. § 350(b).[5] This was the Court in which the case was closed. Moreover, reopening it is necessary in order to afford relief to the Debtor under the instant motion, and for good cause to decide the issues raised by the parties.

Federal Rule of Bankruptcy Procedure 5010 provides that, "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b). . . ." Fed.R.Bankr.P. 5010. In addition, pursuant to 11 U.S.C. § 105(a), the Court, as a party in interest, may sua sponte issue any order that is necessary or appropriate to carry out provisions of this title. Accordingly, despite such oversight on the part of the parties, the Court sua sponte orders the reopening of the case pursuant to section 105(a) and Bankruptcy Rule 5010, solely for the purpose of deciding the issues raised in the motion at bar.

■ The first issue to be determined is whether the Creditor has violated the permanent injunction provisions of the order of discharge entered by Judge Coar. The effect of section 524(a) is an injunction against certain actions. It has long been the law in bankruptcy cases that just as willful violations of the automatic stay of 11 U.S.C. § 362 will give rise to contempt and sanctions, *see, In re Brooks,* 79 B.R. 479 (BAP 9th Cir.1987); *Budget Service Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289 (4th Cir.1986), acts done in violation of the discharge injunction are voidable, *Behrens v. Woodhaven Asso.,* 87 B.R. 971, 976 (Bankr.N.D.Ill.1988), and sanctionable. *In re Barbour,* 77 B.R. 530, 532 (Bankr.E.D.N.C.1987). Creditors cannot be allowed to willfully interfere with a debtor's fresh start by suing in non-bankruptcy courts on discharged debts.

5. Section 350(b) provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).

In this matter, there is no showing, from the limited record in this case, that the Creditor was aware at any time that the Debtor failed to attend the scheduled reaffirmation hearing to receive the admonitions Judge Coar would otherwise have given. On the other hand, it is undisputed that the Debtor never rescinded the reaffirmation agreement. Rather, she continued to make various payments thereunder after its execution and after her discharge, before going into default. The Creditor thereafter repossessed the vehicle, liquidated same, and apparently reduced the deficiency under the reaffirmation agreement to judgment in state court. The Debtor also made various payments in partial satisfaction of the deficiency judgment before retaining her original attorney in this matter. Accordingly, although the Creditor had full knowledge of the discharge order, it was operating on the assumption that it had a valid and enforceable reaffirmation agreement which the Debtor honored for some time post-discharge. In the absence of any showing that the Creditor knew the Debtor did not attend the reaffirmation hearing, the Court is not prepared to infer or find any willful violation of section 524(a). As a result, the Court does not find the Creditor in civil contempt.

[4] Some courts have noted that civil contempt does not require a finding of willfulness or bad faith, for it serves a remedial rather than a punitive purpose. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949); *In re Elias*, 98 B.R. 332, 337 (N.D.Ill.1989). The Court believes the more appropriate view is that in order to sustain a motion for civil contempt, the Court must find that the offending party knowingly violated a definite and specific court order. *In re Ryan*, 100 B.R. 411, 417 (Bankr.N.D.Ill.1989). The record is devoid of any such facts. Hence, the Debtor's motion for contempt is denied.

The ultimate issue is whether the instant reaffirmation agreement is enforceable. Section 524(d), the statutory provision governing reaffirmation agreements, specifically provides:

(d) if the debtor desires to make an agreement of the kind specified in subsection (c) of this section, then the court *shall* hold a hearing at which the debtor shall appear in person and at such hearing the court *shall*—(1) inform the debtor—

(A) that such an agreement is not required under this title, under nonbankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c) of this section; and

(B) of the legal effect and consequences of—

(i) an agreement of the kind specified in subsection (c) of this section; and

(ii) a default under such an agreement;

(2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(6) of this section, if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor.

11 U.S.C. § 524(d) (emphasis added).

The 1984 amendments to the Bankruptcy Code made major changes to the reaffirmation process. For a good discussion on the amendments and the abuses Congress sought to prevent in the enactment and subsequent amendments to section 524, *see In re Oliver*, 99 B.R. 73, 76 (Bankr.W.D.Okla.1989). If a bankruptcy petition was filed on or before October 9, 1984, one set of requirements and rules applies, very different from the applicable requirements for bankruptcy petitions filed after October 9, 1984, as in the instant case. *Compare* 1 R. Ginsberg and R. Martin, *Bankruptcy: Text, Statutes, Rules*, §§ 11.08[b] and 11.08[c] (3rd ed. 1992). The difficulty stems from the confusing language of section 524(d) which in the first part of the section makes it permissive to hold a hearing on reaffirmation agreements, and the last sentence which seem-

ingly mandates a hearing if the discharge has been granted and if the debtor desires to make an agreement. *See In re Richardson*, 102 B.R. 254, 256 (Bankr.M.D.Fla. 1989). The original version of section 524(d) mandated a discharge hearing whether or not the debtor desired to reaffirm any debts. 124 Cong.Rec. H–11096 (daily ed. September 28, 1978); S. 17413 (daily ed. October 6, 1978); remarks by Rep. D. Edwards and Sen. DeConcini. A fair reading of section 524(d) leads to the conclusion that reaffirmation hearings are required, and the agreements are not valid and enforceable unless a hearing is held and the agreement is approved by the court. *Richardson*, 102 B.R. at 256.

 A reaffirmation agreement is enforceable only if: (1) the agreement was made in advance of the debtor's discharge; (2) the agreement contains a clear and conspicuous statement advising the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after the agreement is filed with the court, whichever occurs later; (3) the agreement has been filed with the court; (4) the debtor has not rescinded the agreement; (5) the debtor has been warned by the bankruptcy judge as to the effects of the agreement; (6) the court finds that the agreement does not impose an undue hardship on the debtor; and (7) the court finds that the agreement is in the debtor's best interest. 11 U.S.C. § 524(c)(1)–(6); *In re Ellis*, 103 B.R. 977, 980–981 (Bankr.N.D.Ill. 1989); *In re Hitt*, 137 B.R. 401, 403 (Bankr. D.Mont.1992). These statutory requirements exist to prevent debtors from being coerced into signing reaffirmation agreements and to enable them to be fully aware of the consequences of the agreement. *In re Smurzynski*, 72 B.R. 368, 371 (Bankr. N.D.Ill.1987).

Under the *Ellis* factors, the text of the subject reaffirmation agreement does not contain any clear or conspicuous language advising the Debtor of her rescission rights. Lack of such conspicuous language has been held to be fatal to the enforceability of reaffirmation agreements. *In re Perryman*, 111 B.R. 227, 230 (Bankr.

E.D.Ark.1990); *In re Thomas*, 72 B.R. 223, 226 (Bankr.M.D.Ala.1987).

 It is also undisputed that the Debtor did not appear at the scheduled reaffirmation hearing to receive admonitions by Judge Coar. With respect to this factor, the Court finds that although *Roth* was decided under the former text of section 524 before adoption of the 1984 and 1986 amendments, it is still good law in this district and circuit that a debtor must attend the reaffirmation hearing to receive the judge's admonitions if the reaffirmation agreement is to be personally enforceable against the debtor. As a result of the Debtor's failure to appear, Judge Coar was precluded from making any finding that the agreement did not impose any undue hardship on the Debtor, or that it was in her best interest. Accordingly, even though the agreement was made in advance of the Debtor's discharge, filed with the Court, and not rescinded, not all requirements were met in order to make the agreement personally binding on the Debtor, notwithstanding the *in rem* rights the Creditor had against the subject collateral.

 Additionally, section 524(c)(3) requires that if a debtor has counsel and the reaffirmation agreement is accompanied by a declaration or an affidavit of the attorney that represented the debtor in connection with the negotiations on the reaffirmation agreement, no formal order is required if all other requirements of section 524(c) and (d) are met. 11 U.S.C. § 524(c)(3). The debtor's attorney's affidavit should represent and state that the agreement is a fully informed and voluntary agreement, and does not impose any undue hardship on the debtor or dependent of the debtor. *See* 11 U.S.C. § 524(c)(3)(A) and (B).

 In the matter at bar, the Debtor was represented by counsel at the time of the negotiations and filing of the executed agreement, but no such supporting affidavit was filed by her attorney. This is an additional defect to enforceability *in personam* because there was no order entered by Judge Coar approving the reaffirmation agreement in the absence of such affidavit or declaration. Where a debtor is repre-

sented by an attorney in the negotiation of the reaffirmation agreement, the Bankruptcy Code does not require formal court approval of the reaffirmation to make it enforceable even if the debt is being reaffirmed as a consumer debt, as long as the attorney's affidavit or declaration is filed. *See* 1 R. Ginsberg and R. Martin, *Bankruptcy: Text, Statutes, Rules*, § 11.08[c] at 11–171; *see also In re Wallace*, 102 B.R. 54, 55 (Bankr.E.D.N.C.1989). Moreover, Judges Ginsberg and Martin have aptly noted the only time a formal court approval of a reaffirmation agreement in cases filed after October 9, 1984 is required to make the agreement enforceable, is when a debtor is not represented by counsel during the reaffirmation process. *Id.*

 Because of the patent deficiencies in the instant reaffirmation agreement, the waiver theory espoused in *Sweet* is inapposite. On this record, the Court is unable to make any finding of knowing waiver by the Debtor. *Sweet* noted that the doctrine of waiver is predicated on an intentional relinquishment of a known right. 954 F.2d at 613. As the *Sweet* court stated, the waiver doctrine consists of three elements: (1) the existence at the time of waiver, a right, privilege, advantage or benefit which may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage or benefit. *Id.* *Sweet* stated that waiver may be express or implied from conduct, and if implied, the circumstances relied upon to show waiver must make out a clear case. *Id.*

 The only undisputed material fact is that the Debtor did not attend the reaffirmation hearing, despite receipt of advanced notice of same. No reason has been advanced as to why the Debtor did not attend the reaffirmation hearing. The Court will not speculate that the Debtor's failure to attend the hearing was either intentional or voluntary by her mere admission that she did not attend same. Moreover, the Court questions whether the doctrine of waiver enunciated in *Sweet* is truly applicable in light of the statutory duty imposed on debtors to attend such hearing.

Section 521(5) mandates that a debtor shall appear at the reaffirmation hearing. That obligation is more in the nature of a non-waiveable duty rather than a right, privilege, advantage or benefit. It is somewhat ironic that neither the Bankruptcy Code nor the Rules setup any clear procedure to enforce the duty. Many debtors have not, for a variety of reasons, attended scheduled reaffirmation hearings. Consequently, it remains essential for creditors to monitor debtors' attendance at such hearings in order to make reaffirmation agreements enforceable, *in personam* against debtors post-petition and post-discharge, as well as *in rem* against their collateral. As a practical and legal matter, if creditors are not willing to monitor attendance of debtors at reaffirmation hearings and, if necessary, request continuances thereof to secure attendance, creditors are left with their *in rem* remedies against their collateral.

It is unfortunate that the drafters of the current text of section 524, in their attempts to streamline the reaffirmation process, did not provide greater clarity and simplicity to the statutory text by the 1984 and 1986 amendments. As a result, although section 521(5) places the duty of attendance on debtors, the provisions of section 524(c) and (d) practically compel creditors to monitor debtors' attendance, as well as carefully draft the text of reaffirmation agreements to comply with all the requirements of section 524(c). Absent proper draftsmanship of reaffirmation agreements and monitoring debtors' attendance at reaffirmation hearings, merely leaves a creditor with its *in rem* collateral rights and remedies intact, but at risk that its *in personam* rights against the debtor will be held unenforceable as here. *See e.g., Dewsnup v. Timm*, — U.S. —, —, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992) (a lien on real property passes through bankruptcy unaffected). Better reaffirmation is within the exclusive discretion of Congress to legislate, not this Court. The text of the existing statute must be applied and construed in accordance with the plain meaning of the statutory text, notwithstanding drafting oversights by the Creditor in this reaffirmation

agreement and the Debtor's failure to attend the scheduled reaffirmation hearing.

## V. CONCLUSION

For the foregoing reasons, pursuant to the authority under 11 U.S.C. §§ 105(a) and 350(b) and Federal Rule of Bankruptcy Procedure 5010, the Court reopens this case for the sole purpose of deciding the instant motion. The Debtor's motion is hereby denied. In addition, the relief requested by the Creditor is also denied. The subject reaffirmation agreement is further held and determined to be unenforceable. Each party shall bear its own attorneys' fees and costs incurred.

This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.